**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CATHY ANN MCCURDY,

     Plaintiff,

v.                                 No. 13-CV-890 JCH/CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

     Defendant.

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and/or Remand Administrative Agency Decision*, filed on April 7, 2014, (Doc. 21), and Plaintiff's *Memorandum in Support of Plaintiff's Motion to Reverse and/or Remand Administrative Agency Decision*, filed on April 7, 2014, (Doc. 22) (together, the "Motion"); and Defendant's *Social Security Response Brief* ("Response"), filed on June 3, 2014, (Doc. 23). U.S. District Judge Judith C. Herrera referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition of the case. (Doc. 16).

On December 3, 2009, Cathy Ann McCurdy filed applications for disability insurance benefits and supplemental security income, alleging disability beginning March 1, 2007. (Administrative Record ("AR") 141-49). Her application was denied on February 18, 2010, (AR 80-83), and also upon reconsideration on July 26, 2010, (AR 87-89). Ms. McCurdy filed her request for a hearing before an Administrative Law Judge ("ALJ") on October 5, 2010, (AR 95-96); a hearing occurred on December 14, 2011

before ALJ Barry O'Melinn, (AR 33-77). Ms. McCurdy and Pamela A. Bowman, an impartial vocational expert, testified at the hearing. (AR 33-77). The ALJ issued his opinion on February 8, 2012, finding that Ms. McCurdy is not disabled under 20 C.F.R. § 404.1520(f). (AR 27). Ms. McCurdy filed an application for review by the Appeals Council, (AR 14-15), which was denied, (AR 1-5), making the decision of ALJ O'Melinn the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. McCurdy argues that the ALJ committed reversible, legal error by: (1) improperly discrediting Ms. McCurdy's testimony as to the effect and extent of her disabling pain; (2) failing to properly consider those limitations in his assessment of Ms. McCurdy's residual functional capacity ("RFC"); and (3) incorrectly concluding that she could return to her past relevant work. (Doc. 22 at 2, 22).

The Court has reviewed the Motion, the Response, and relevant law. In addition, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ's finding that Ms. McCurdy's testimony was not credible is not supported by substantial evidence, and because that finding is so intertwined with his assessment of Ms. McCurdy's RFC, the Court recommends that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98

(10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

## III.    Background

Ms. McCurdy initially applied for disability benefits alleging chronic low back, muscle, and joint pain. She explained that she experiences chronic lower back pain due to lumbar facet syndrome, resulting from injuries sustained in a car accident in 2004.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

(AR 41, 317). Ms. McCurdy has a history of seeking pain management and physical therapy for her back. (AR 280-301). In addition, she underwent a laser therapy and arthroscopic procedure and other treatment including surgical lumbar facet nerve rhizotomy procedures. (AR 25, 317, 326-29). She alleges that her muscle and joint pain are related to her fibromyalgia diagnosis, for which she has also sought treatment. (AR 25-26, 477-78). The administrative record includes her medical records, earnings records, work background, disability application, Function and Third-Party Function Reports, and non-examining State agency evaluations.

At step one, the ALJ determined that Ms. McCurdy had not engaged in substantial gainful activity since her alleged onset date of disability. (AR 22). At step two, the ALJ concluded that Ms. McCurdy was severely impaired by lumbar facet disease, obstructive sleep apnea, obesity, diabetes mellitus, hypothyroidism, hypolipidemia, and fibromyalgia. (*Id*).

At step three, the ALJ explained that he specifically considered whether Ms. McCurdy's impairments satisfied or met any of the listed impairments. He determined that none of Ms. McCurdy's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. (AR 23).

The ALJ proceeded to step four. First, he analyzed Ms. McCurdy's subjective complaints of pain and the objective medical evidence in the record. (AR 24-27). The ALJ found that Ms. McCurdy's statements as to the intensity, persistence, and limiting effects of her pain symptoms were not credible to the extent they were inconsistent with his RFC assessment. (AR 25). He based this adverse credibility finding on Ms. McCurdy's self-reported daily activities, and her daily activities as described by her

husband, Donald McCurdy, in his Third-Party Function Report. He also stated that his finding was based on her receipt of unemployment benefits, her ability to drive, and the dearth of objective evidence in the record. (AR 24-27). The ALJ emphasized that nowhere in the medical record did a physician opine that Ms. McCurdy is disabled or unable to work.

The ALJ ultimately found that Ms. McCurdy could perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (AR 23). The ALJ determined that she was further limited to occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, and has occasional limitations in balancing stooping, kneeling, crouching, and crawling. (AR 24).

The ALJ then explained that, based on the testimony from the vocational expert, Ms. McCurdy is able to perform her past relevant work as a secretary or booker. (AR 27). Accordingly, he found that Ms. McCurdy was not disabled under the Social Security Act.

## IV.    Analysis

Ms. McCurdy claims that the ALJ committed several reversible errors by: (1) improperly discrediting her testimony on the effect and extent of her disabling pain; (2) failing to consider those limitations in his assessment of her RFC; and (3) incorrectly finding that she could return to her past relevant work. (Doc. 22 at 2, 22). Specifically, Ms. McCurdy contends that the ALJ's credibility determination is not supported by substantial evidence, because he mischaracterized her subjective complaints, overemphasized her receipt of unemployment benefits, and improperly relied on a lack of corroborating, objective evidence. (Doc. 22 at 14-20). Ms. McCurdy argues that,

because the ALJ ignored the extent and effect of her disabling pain in making the RFC finding, he rendered an RFC unsupported by evidence and law. (Doc. 22 at 5).

The Commissioner responds that the ALJ properly evaluated the credibility of Ms. McCurdy's subjective complaints, and his determination that Ms. McCurdy was not entirely credible is supported by substantial evidence. (Doc. 23 at 3). The Commissioner maintains that that the ALJ permissibly relied on Ms. McCurdy's functional restrictions, the inconsistent objective medical findings, and self-reports of her daily activities in the record, to draw appropriate inferences as to her credibility. (Doc. 23 at 4-6). The Commissioner further contends that, given the ALJ's credibility determination, the entire medical record, and evidence of Ms. McCurdy's daily activities, the ALJ's RFC assessment is supported by substantial evidence. (Doc. 23 at 6-8).

A. *Ms. McCurdy's Challenge to the Credibility Determination*

Ms. McCurdy argues that the ALJ improperly discredited her testimony as to the effect and extent of her disabling pain. (Doc. 22 at 2). Ms. McCurdy contends that the ALJ's credibility determination is unsupported by substantial evidence. (Doc. 22 at 22). She claims the ALJ mischaracterized her testimony and the Third-Party Function Reports, overemphasized her receipt of unemployment benefits, and incorrectly relied on a lack of corroborating, objective evidence to make adverse findings. (Doc. 22 at 14-20). The Commissioner argues that the ALJ's reliance on Ms. McCurdy's reported daily activities, her receipt of unemployment benefits, and the fact that no physician opined that she was unable to work or disabled, supports the ALJ's credibility finding. (Doc. 23 at 5-6; AR 24-27).

1. *Standard for Evaluating Subjective Complaints of Pain*

7

An ALJ may only find the claimant's pain to be disabling if it is "so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *See Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) (quotations omitted). The ALJ must consider the credibility of the claimant's subjective testimony about her pain, and its effect on her ability to work, in making the RFC determination. *See Madron v. Astrue*, No. 06-1200, 311 Fed. Appx. 170, 175 (10th Cir. Feb. 11, 2009) (unpublished) (citing Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4, at *6). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Guiliano v. Colvin*, No. 13-1455 at 8 (10th Cir. filed Sept. 2, 2014), *available at* http://www.ca10.uscourts.gov/opinions/13/13-1455.pdf (citing *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (brackets, citation, and internal quotation marks omitted)).

The framework for the proper analysis of a claimant's subjective testimony is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The ALJ must consider:

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375–76 (10th Cir. 1992) (citing *Luna*, 834 F.2d at 163–64).

The ALJ found that Ms. McCurdy met the first two prongs of the three-part inquiry because her lumbar facet disease and fibromyalgia could reasonably be expected to

cause her pain symptoms. (AR 24). Therefore, only the third prong of the ALJ's pain analysis is at issue in this case.

The third prong required the ALJ to consider all of the evidence, both objective and subjective, to determine whether Ms. McCurdy's pain was disabling. "Objective" evidence is any evidence, whether physiological or psychological, that can be discovered and substantiated by external testing. *Luna*, 834 F.2d at 162. "Subjective" evidence consists of statements by a claimant or other witnesses that can be evaluated only on the basis of credibility. *Id.* at 162 n.2. The ALJ noted that the objective medical evidence demonstrates that Ms. McCurdy has a history of degenerative facet syndrome with degenerative joint disease, for which she sought pain management, and a fibromyalgia diagnosis. Therefore, the ALJ was required to consider her claims of disabling pain and decide whether he believed her. *Id.* at 163; *see also* 42 U.S.C. 423(d)(5)(A).

To determine whether a claimant's statements of his symptoms are believable, or credible, the ALJ must consider certain criteria in addition to the medical evidence in the record. 20 C.F.R. § 404.1529(c). The so-called "credibility factors" include the: (i) nature of the claimant's daily activities; (ii) the levels of medication and their effectiveness; (iii) the frequency of medical contacts; (iv) and the consistency of non-medical testimony with objective medical evidence. *See Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004) (quotation omitted). A formal factor-by-factor review of the evidence is not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

*2.  The ALJ's Credibility Determination*

The ALJ found that Ms. McCurdy's "statements concerning the intensity,

persistence and limiting effects of these [pain] symptoms are not credible to the extent

they are inconsistent with the above residual functional capacity assessment." (AR 24).

He based the finding on Ms. McCurdy's self-reported daily activities, such as driving,

caring for her 21-year-old special-needs son, and running her household when her

husband is not present; her receipt of unemployment benefits; and the absence of any

statement by a physician that she is disabled or unable to work. (AR 24-26).

     *a. Daily Activities*

     Ms. McCurdy first claims that the ALJ relied too heavily on her daily activities,

without considering her limitations or restrictions while engaging in those activities.

(Doc. 22 at 14). She argues that the ALJ's reliance on her ability to drive, take care of

her son, and perform household chores and shopping was improper. (*Id*). She claims

her ability to engage in these activities was limited to driving her son to doctor

appointments on days her pain was manageable, doing light housework, such as

cleaning the sink and sorting laundry, and grocery shopping with an electric cart for

short periods of time. (Doc. 22 at 14-16, 19-20).

     The Commissioner argues that the record demonstrates that she is able to shop,

drive, take care of her 21-year-old special needs son, and run a household. (Doc. 23 at

5). The Commissioner maintains that the ALJ drew appropriate inferences from the

record of her daily activities in assessing Ms. McCurdy's credibility. (*Id*).

     It is certainly appropriate for an ALJ to consider a claimant's daily activities when

evaluating the credibility of her subjective complaints of pain. *Guiliano*, No. 13-1455 at 9

(citing *Newbold v. Colvin*, 718 F.3d 1257 (10th Cir. 2013)) (finding that the ALJ's

examination of a claimant's daily activities was appropriate because they undercut her

claim that she was unable to work).

On the other hand, daily activities that have been mischaracterized or overstated are not a sufficient basis for an adverse credibility finding. Where such activities have been mischaracterized or are contradicted by the hearing testimony or record, an ALJ's decision may be reversed. *See Wade v. Astrue*, No. 07-6154, 268 Fed. Appx. 704, 706 (10th Cir. Jan. 23, 2008) (unpublished) (directing the ALJ to reevaluate claimant's credibility on remand since he mischaracterized claimant's testimony in making his adverse credibility finding). This is particularly true where mischaracterized evidence is consistent with other statements made to the Agency. *See Madron*, 311 Fed. Appx. at 177 (ALJ erred in concluding testimony about daily activities undercut her credibility as to severity of pain where ALJ's finding of daily activities was contradicted by hearing transcript and other consistent statements to the Agency).

Here, the ALJ found Ms. McCurdy's complaints of pain to be inconsistent with her daily activities of driving her son to appointments or other errands, caring for her 21-year-old special needs son, going grocery shopping, and "essentially run[ning] the household" when her husband is out of town during the week. (AR 24-26). However, they are contradicted by Ms. McCurdy's testimony and overwhelmed by other evidence in the record. These facts alone constitute a mere scintilla of evidence.

First, the ALJ discussed the fact that Ms. McCurdy drove herself to the hearing and drives her son to doctor appointments and to the grocery store. (*Id*). He states that, to drive, she must be able to manipulate hand and foot controls. (AR 24). He also questioned Ms. McCurdy's pain symptoms because she had not notified the Motor Vehicle Department of her condition or relinquished her driver's license. (AR 24-25).

However, whether Ms. McCurdy has notified the Motor Vehicle Department about her condition, or has a driver's license, is not part of the record – the ALJ only inquired as to whether she drove a car. (AR 40). Furthermore, these statements omit other evidence from the record. Ms. McCurdy stated that she drove to the hearing, (AR 40), and that she drives to appointments and runs other errands when her pain is manageable, but on other days her sister, neighbor, or husband will drive. (AR 59). On days when the pain is particularly bad, she testified that she lies in bed and takes a muscle relaxer or narcotic. (AR 58). She testified that she spends at least three to four days each week in bed. (AR 57).

The ALJ stated that Ms. McCurdy manages her household, including going grocery shopping and caring for her son, based on Ms. McCurdy's husband's statements in his Third-Party Function Reports.[2] (AR 25). Mr. McCurdy stated that Ms. McCurdy can dust and clean counters, sort laundry, or do light ironing on a good day. (AR 61, 220, 225). Yet, he also reported that Ms. McCurdy cannot clean the house or do yard work, laundry, or clean dishes. (AR 219). He stated that she cannot prepare a meal by herself, and that he prepares all meals besides a bowl of cereal or a sandwich. (AR 220, 224). Although she watches their son during the day, their son helps her by feeding the dogs, (AR 219), and getting items out of the pantry or refrigerator. (AR 207). The report indicates she goes grocery shopping and to other appointments, but when she does she uses an electronic cart in the store and otherwise makes sure her outings do not last more than a couple hours. (AR 224). In her testimony, she explained that when her husband is not home, she relies on her sister and neighbor to help around the

---

[2] Mr. McCurdy completed two Third-Party Function Reports, one on January 8, 2010, (AR 183-92), and the other on April 19, 2010, (AR 215-28). His responses in both Reports are identical.

house. (AR 53).

The Court finds Mr. McCurdy's reports and Ms. McCurdy's statements of her daily activities to be consistent. In her testimony and Function Report she corroborates her husband's statements that she cannot stand in the kitchen, cook dinner, or fold laundry, (AR 52), and that when she goes grocery shopping she has to use an electronic cart. (*Id*). She testified that she only cleans sinks and sorts laundry, as she and Mr. McCurdy describe in their Function Reports. (AR 61, 209, 220, 225). Ms. McCurdy also stated that the fact she cannot care for her son in many ways exacerbates her depression. (*Id*). She reported to physicians that she could not tolerate any exercise, (AR 446, 671), and has a history of seeking pain management, (AR 280-302, 351-77, 579-89).

The Court finds that the ALJ improperly mischaracterized Ms. McCurdy's daily activities in the credibility analysis, and the evidence in the record is not enough to support his finding. The evidence of Ms. McCurdy's daily activities supporting an adverse credibility finding consists of occasionally driving, sometimes going grocery shopping in an electronic cart, and performing light household chores, such as cleaning counters, sorting laundry, or dusting when her pain is manageable. This evidence is overwhelmed by other evidence to the contrary. The Court emphasizes that while it cannot re-weigh the evidence, it is obligated to meticulously review the record. Upon this meticulous review, it is clear that Ms. McCurdy's daily activities supporting the ALJ's credibility determination are not substantial evidence, but rather constitute a mere scintilla of evidence. Therefore, Ms. McCurdy's daily activities do not support the adverse credibility finding.

b. *Unemployment Benefits*

Ms. McCurdy further contends that the ALJ improperly discredited her testimony based on her receipt of unemployment benefits after her alleged onset of disability. (Doc. 22 at 17-19). The Commissioner responds that, in order to obtain unemployment benefits, an applicant must attest that she is ready and willing to work. (Doc. 23 at 5). Ms. McCurdy's receipt of these benefits, the Commissioner argues, is inconsistent with her claim of disability. (*Id*).

Claims for unemployment, where a claimant attests she is ready and willing to work, may be facially inconsistent with disability claims. The Tenth Circuit has found the receipt of unemployment benefits to be a permissible factor considered in an adverse finding of credibility. *See Lately v. Colvin*, No. 13-1131, 560 Fed. Appx. 751, 755 (10th Cir. March 26, 2014) (unpublished) (finding an ALJ's adverse credibility determination was supported by substantial evidence when the ALJ discussed the claimant's collection of unemployment benefits, among many other factors). However, the Tenth Circuit has never found that receipt of benefits alone constitutes substantial evidence to support an adverse credibility finding. *See Guiliano*, No. 13-1455, at 10 (declining to address the issue of whether the receipt of unemployment benefits was an appropriate basis for discrediting the claimant where the ALJ cited other evidence to support her adverse credibility finding).

Other circuits have held that, while the receipt of unemployment benefits during an alleged disability may be one of several factors considered in making an adverse credibility finding, it is not necessarily conclusive. *See Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991); *Schmidt v. Barnhard*, 395 F.3d 737, 746 (7th Cir. 2005);

*Myers v. Barnhart*, No. 02-2747, 57 Fed. Appx. 990, 997 (3rd Cir. Feb. 25, 2003) (unpublished); *Perez v. Secretary of Health Education, and Welfare*, 622 F.2d 1, at *3 (1st Cir. 1980). This is especially true where the testimony is supported by medical reports. *See Spencer v. Bowen*, 798 F.2d 272, 278 (8th Cir. 1986).

These courts have inquired whether a claimant has provided any reasonable explanation for the receipt of such benefits during an alleged period of disability. *See Bowden v. Commissioner*, No. 97-1629, 173 F.3d 854, at *7 (6th Cir. Jan. 29, 1999) (unpublished). The Ninth Circuit has found that in some circumstances, an application for state unemployment benefits is not necessarily inconsistent with a claim of disability under the Social Security Act. *Owens v. Barnhart*, No. 00-35998, 48 Fed. Appx. 624, 625 n.1 (9th Cir. Oct. 3, 2002) (unpublished) (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475) (explaining that an applicant may receive state unemployment benefits even if he is only able to work part-time, while he will still be considered disabled if he cannot work on a regular and continuing basis of eight hours a day, five days a week); *Carmickle v. Commissioner*, 533 F.3d 1155, 1161-62 (9th Cir. 2005) (recognizing that the receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time, but not necessarily part-time).

This Court finds that the ALJ's use of unemployment compensation as a basis to discredit Ms. McCurdy's testimony was improper. During the hearing, the ALJ asked Ms. McCurdy about her application for, and receipt of, unemployment benefits from the summer of 2006 through the summer of 2007. (AR 41-44). Ms. McCurdy explained that she received unemployment benefits and searched for jobs after her termination in June 2006, but did not get any job offers, at which point she believed she was unable to

perform any job at all. (AR 41-42). She stated that she had applied to jobs because she believed she could work somewhere, even if it was part-time. (AR 42-43).

In this Court's view, her explanation is not facially inconsistent with her application for disability benefits. Her alleged date of disability onset and receipt of unemployment benefits overlap for approximately four months. Indeed, she stopped receiving payments in the summer of 2007 – over seven years ago. During this brief overlap, Ms. McCurdy explained that she believed for some time that she was capable of working, even if it was only part-time. The ability and willingness to work part-time, or anything less than a regular, continuing basis, is not inconsistent with a claim for disability benefits. *See Owens*, 48 Fed. Appx. at 625 n.1; *Carmickle*, 533 F.3d at 1161-62. Whether Ms. McCurdy held herself out as being able to work part-time or full-time is not part of the record. Thus, her receipt of unemployment benefits is not substantial evidence to support the ALJ's adverse credibility finding.

###### *c. Objective Medical Evidence*

Last, Ms. McCurdy argues that the ALJ improperly relied on a lack of corroborating medical evidence as to the severity of her pain symptoms to make his credibility determination. (Doc. 22 at 11). She notes that, in his decision, the ALJ mentioned that none of Ms. McCurdy's physicians concluded or provided a statement that she is unable to work or disabled. (*Id.*; AR 25-26). The Commissioner argues that the ALJ properly relied on the lack of supporting objective medical evidence as a valid factor in assessing credibility. (Doc. 23 at 5-6).

Ms. McCurdy's statements concerning the intensity or persistence of pain are not to be rejected solely because the medical record does not substantiate her statements.

20 C.F.R. § 404.1529(c)(2); SSR 96-7p at *6. Indeed, the Tenth Circuit has cautioned that an absence of such a statement "does not seriously undercut [a claimant's] credibility." *Madron*, 311 Fed. Appx. at 178. "While the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Id.* (citing *Hamlin*, 365 F.3d at 1220 (alternations and quotation marks omitted)). Nevertheless, the fact that no physician describes the claimant as disabled is "one factor to be considered in evaluating the credibility of the testimony and complaints." *Luna*, 834 F.2d at 165 (citing *Polaski v. Heckler,* 751 F.2d 943, 948 (8th Cir.1984)).

In this case, the objective medical record demonstrates Ms. McCurdy's diagnoses of spinal conditions and fibromyalgia, and her medical history of pain management. The fact that no physician has opined that she is disabled cannot completely undermine her statements as to the severity of that pain. *See Madron*, 311 Fed. Appx. at 178 (finding that where medical tests established a basis for the pain, the fact that physicians' statements did not conclusively prove claimant's complaints about the extent of her pain did not justify disregarding those claims). Thus, without additional support, the lack of such a statement is not substantial evidence.

The ALJ also mentions, (AR 26), and the Commissioner notes in her Response, (Doc. 23 at 6), that Dr. Juliet A. Coquia, M.D. recommended a treatment regimen which includes exercise. (AR 477-78). It is unclear how the ALJ used this treatment recommendation in his analysis, but the Court does not find that this recommendation undermines Ms. McCurdy's subjective complaints of pain. Dr. Coquia met with Ms.

McCurdy regarding her treatment of fibromyalgia – not for her back injuries. (AR 476). It is undisputed that Ms. McCurdy underwent surgical procedures and other treatments to manage her back pain. (AR 25, 29, 280-301, 326-29). Considering this history, a treatment regimen for fibromyalgia that includes exercise does not suggest that Ms. McCurdy's impairments, and specifically her back pain, are less severe than alleged. Furthermore, other physicians throughout the record note that Ms. McCurdy reported she could not tolerate exercise. (AR 446, 671).

To be sure, the only indication from the objective record that Ms. McCurdy may be exaggerating her pain symptoms is from Dr. Mark A. Werner M.D.'s physical RFC assessment.[3] In his assessment, he states that her "alleged limitations appear excessive considering medical evidence." (AR 612). Although the ALJ mentioned this assessment, he does not explain what weight he gives the opinion, or why he has given it any weight in the first place. (AR 26).

Dr. Werner is a non-examining State agency physician, whose RFC assessment is a medical opinion, or medical source statement, pursuant to 20 C.F.R. § 404.1513(c). The Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). A non-examining State agency physician's medical opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's

---

[3] The Commissioner does not directly address Dr. Werner's medical opinion. (Doc. 23).

attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)–(d) and 416.927 (c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted).

The ALJ is silent as to the weight he gives Dr. Werner's RFC assessment. He only cursorily states that "[t]he physical and postural limitations supported by evidence of record and assessed by state agency physician Mark A. Werner as [sic] a limited range of sedentary work. I find Dr. Werner's opinion, [sic] consistent with my evaluation of the record." (AR 26). As a result, the Court is unable to determine how exactly Dr. Werner's assessment supported the ALJ's decision as to Ms. McCurdy's credibility or her RFC, and the weight of that assessment. Therefore, Dr. Werner's opinion does not provide the requisite evidentiary support for the ALJ's adverse credibility finding.

In conclusion, the ALJ's adverse credibility finding is not supported by substantial evidence. Ms. McCurdy's self-reported daily activities do not support such a finding, and the ALJ's reliance on her receipt of unemployment benefits was misplaced. Thus, the remaining support for the ALJ's credibility determination is the fact that no physician opined that Ms. McCurdy was unable to work or disabled. This, alone, falls short of constituting substantial evidence.

B.   *Ms. McCurdy's Challenge to the RFC Finding*

The ALJ's flawed credibility determination requires reassessment of the RFC. "The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective

complaints." *Poppa v. Astrue,* 569 F.3d 1167, 1170-71 (10th Cir. 2009) (citing 20 C.F.R. §§ 416.929, 416.945). The credibility finding is part of that record, and is meant to help the ALJ asses a claimant's RFC. *Poppa*, 569 F.3d at 1171.  As a result, "the ALJ's credibility and RFC determinations are inherently intertwined." *Id.*

Here, the ALJ's credibility finding was improper. Because the credibility of a claimant's testimony is so intertwined with the RFC assessment, the RFC must be reassessed. Therefore, the Commissioner's argument that substantial evidence supports the ALJ's RFC finding is without merit.

**V.    Conclusion**

For the reasons discussed above, the Court concludes that the ALJ's credibility finding is unsupported by substantial evidence, and as a result the RFC must be reassessed. On remand the ALJ should reevaluate the credibility of Ms. McCurdy's subjective complaints of pain based on the evidence in the record. The Court does not decide any other issue raised by Ms. McCurdy, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's *Motion to Reverse and/or Remand Administrative Agency Decision*, filed on April 7, 2014, (Doc. 21), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

20

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE